NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 27 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| NORTH CASCADES CONSERVATION COUNCIL; KATHY JOHNSON, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, an administrative agency of the United States of America; et al., <br><br> Defendants-Appellees, <br><br> HAMPTON LUMBER MILLS-WASHINGTON, INC.; et al., <br><br> Intervenor-Defendants-Appellees. | No.   22-35430 <br><br> D.C. No. 2:20-cv-01321-DGE <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted February 13, 2023
Seattle, Washington

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: W. FLETCHER, PAEZ, and VANDYKE, Circuit Judges.

North Cascades Conservation Council and Kathy Johnson (collectively, Appellants) appeal the district court's decision adopting the magistrate judge's report and recommendation (R&R) and granting summary judgment for the U.S. Forest Service (Forest Service). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We review a grant of summary judgment de novo and review the agency's decision to approve the South Fork Stillaguamish Vegetation Project (Project) under the Administrative Procedure Act to determine whether the approval was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1032 (9th Cir. 2020) (quotation omitted); *see Bark v. U.S. Forest Serv.*, 958 F.3d 865, 869 (9th Cir. 2020).

First, the Project will not violate the 1994 Northwest Forest Plan's prohibition against a "net increase in the amount of roads" in the Project area. The Forest Service reasonably interpreted "net increase" to permit roads that temporarily increase the mileage in the Project area so long as, at the end of the Project, there is no increase. Indeed, at oral argument, Appellants appeared to concede that the amount of roads in the Project area can temporarily increase without violating the prohibition. And all the roads that the Project will add to the Project area will be decommissioned at the end of the Project. Appellants argue that the Forest Service

miscategorized some roads, which will result in some roads being built, mistakenly being thought to have always existed, and then not being decommissioned. But they fail to identify any roads that the Forest Service mistakenly counted as existing that will not be decommissioned upon completion of the Project. Moreover, contrary to Appellants' argument, neither the 1994 Plan nor our precedent require the Forest Service establish a baseline to comply with the 1994 Plan's prohibition.

Appellants also argue that some of the temporary roads will violate the prohibition on "net increase[s]" because the roads will remain too long before being decommissioned. But at oral argument, the government confirmed that the temporary roads will be decommissioned at the end of each contract, noting the "contracts expressly require the contractors to [do so]." And the government further confirmed that the future contracts for the Project will require decommissioning as the Project proceeds. Moreover, the Decision Notice explained that, "per standard timber sale contract clauses, temporary roads would be decommissioned following use." Even assuming that a project could violate the "net increase" prohibition by adding "temporary" roads that indefinitely increase the amount of roads in the Project area, the roads in this case will be sufficiently transitory to comply with the regulation. And because all the temporary roads will be decommissioned and no baseline is necessary, Appellants' other arguments fail to show the Project violates the "net increase" prohibition.

Second, assuming that the 1990 Mount-Baker Snoqualmie National Forest Plan requires the Project to preserve certain amounts of woodpecker habitat throughout the forest, the Forest Service did not act unreasonably in interpreting the regulation to measure compliance at the forest level, instead of requiring certain amounts in just the Project area. In light of that assumption and the Forest Service's reasonable interpretation, Appellants fail to show that the Project is noncompliant. The Decision Notice explained how the Project promotes woodpecker habitat and the Final Environmental Assessment (FEA) concluded that the Project "would not contribute to a negative trend in the viability of snag associated management indicator species [i.e., woodpeckers] on the Forest." Appellants fail to show that this conclusion was in error or that the Project would violate the requirement. Nor does their argument hold water that the agency turned a "blind eye" to the requirement pertaining to riparian areas, as the Project includes measures to mitigate harm to woodpecker habitat in riparian areas.

Appellees contend that Appellants forfeited the remaining four issues because Appellants failed to raise them to the district court after the magistrate judge recommended that they be rejected. Assuming without deciding that Appellants preserved the issues, they provide no basis for reversing the district court.

The Forest Service "satisfied [its] obligation" under the 1990 Plan to prepare a Biological Evaluation when sensitive species are present. *Inland Empire Pub.*

4

*Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 762 (9th Cir. 1996). The Decision Notice explains that "Biological Evaluations were prepared" and concluded that that the Project would not "contribute to or trend these [sensitive] species toward being listed as Threatened or Endangered." The Project record explains this conclusion. Looking at the "evidence the Forest Service has provided to support its conclusions," we cannot say "the record plainly demonstrates that the Forest Service made a clear error in judgment in concluding that a project meets the requirements of the [National Forest Management Act] and relevant Forest Plan." *The Lands Council v. McNair*, 537 F.3d 981, 993–94 (9th Cir. 2008), *overruling on other grounds recognized by Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 & n.10 (9th Cir. 2009).

Nor did the Project violate a 2001 amendment to the 1994 Plan, which requires the Forest Service to perform "Pre-Disturbance Surveys" for Category A species. Appellees both argue that the Project is exempted from the survey requirement. But assuming arguendo that the Project is not exempted, Appellants fail to show the Forest Service violated the 2001 amendment's requirements regarding the Puget Oregonian snail. The Forest Service reasonably determined that, although the snail is a Category A species, no pre-disturbance survey was necessary. The snail is suspected but not documented to occur in the Project area. Appellants' arguments to the contrary are unpersuasive. The Forest Service did not commit a "clear error

in judgment" in finding that a pre-disturbance survey was unnecessary. *Alaska Survival v. Surface Transp. Bd.*, 705 F.3d 1073, 1079 (9th Cir. 2013) (quotation omitted).

Finally, the Project did not violate the National Environmental Policy Act (NEPA) by failing to take a hard look or consider a range of reasonable alternatives. Appellants contend that the agency needed to establish a baseline of the wildlife population in the Project area for it to have taken a hard look, as required by NEPA. *See Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 89, 97 (1983). Under NEPA, the Forest Service must "assess, in some reasonable way, the actual baseline conditions at the [project] site." *Or. Nat. Desert Ass'n v. Jewell*, 840 F.3d 562, 569 (9th Cir. 2016) (citations omitted). The Forest Service did that, analyzing the various species of wildlife in the Project area along with their habitats. The agency took a sufficiently hard look at the Project's impact on the environment, reasonably explaining how the Project will affect and benefit species in the Project area. *See Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1023 (9th Cir. 2012); *McNair*, 537 F.3d at 1003.

NEPA also requires that agencies "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(2)(E). The "range of alternatives that must be considered in the

[Environmental Impact Statement],"—and, by extension, an Environmental Assessment, *see N. Idaho Cmty. Action Network v. U.S. Dep't of Transp.*, 545 F.3d 1147, 1153 (9th Cir. 2008)—"need not extend beyond those reasonably related to the purposes of the project." *Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 868 (9th Cir. 2004) (quotation omitted). The Forest Service considered a range of reasonable alternatives—ten, actually. *See Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1246 (9th Cir. 2005). The alternatives that Appellants argue the Forest Service should have considered in greater depth would "extend beyond those reasonably related to the purposes of the project." *Westlands Water Dist.*, 376 F.3d at 868 (quotation omitted). Moreover, Appellants offer no explanation of how their alternatives would be funded. *See id.* (explaining that the "choice of alternatives is 'bounded by some notion of feasibility'" (quotation omitted)). Appellants fail to show a violation of NEPA.[1]

**AFFIRMED.**

---

[1] We deny Appellants' Motion to Expedite.